2015 ND 228

**Brandon KELLER, Petitioner and Appellant**

v.

**STATE of North Dakota, Respondent and Appellee.**

**No. 20140438.**

Supreme Court of North Dakota.

Sept. 17, 2015.

Rehearing Denied Oct. 13, 2015.

Thomas J. Glass, Bismarck, ND, for petitioner and appellant.

Dawn M. Deitz, Bismarck, ND, for respondent and appellee.

McEVERS, Justice.

[¶ 1] Brandon Keller appeals a district court order dismissing his application for post-conviction relief. Keller argues his conspiracy to commit murder and attempted murder convictions are illegal because N.D.C.C. §§ 12.1–06–01 and 12.1–16–01(1)(b), attempted murder under circumstances manifesting an extreme indifference to the value of human life, and N.D.C.C. §§ 12.1–06–04 and 12.1–16–01(1)(b), conspiracy to commit murder under circumstances manifesting an extreme indifference to the value of human life, are incognizable offenses. We affirm the district court's dismissal because Keller has failed to establish a new interpretation of law applies to his case, and his application is therefore barred by the statute of limitations.

I

[¶ 2] In 2003, a jury found Keller guilty of conspiracy to commit murder, attempted murder, and reckless endangerment. On February 20, 2004, the district court sentenced Keller to twenty years in prison on each count for the conspiracy to commit murder and the attempted murder convictions to run concurrently and, thereafter, to five years in prison for the reckless endangerment conviction. Keller appealed the criminal judgment arguing the district court erred in failing to instruct the jury on lesser-included offenses and the evidence was insufficient to support the jury's verdicts. This Court affirmed in *State v. Keller*, 2005 ND 86, 695 N.W.2d 703.

[¶ 3] On May 19, 2014, Keller moved to correct an illegal sentence arguing he was convicted of an incognizable offense, attempted murder under circumstances manifesting extreme indifference to human life. The district court denied Keller's motion. Keller did not appeal the district court's denial of his motion to correct an illegal sentence.

[¶ 4] On August 8, 2014, Keller applied for post-conviction relief arguing new interpretations of law apply retroactively to his case. Specifically, Keller argued his attempted murder and conspiracy to commit murder convictions were based on incognizable offenses and should be vacated. In support, Keller relied primarily on this Court's 2013 decisions in *Dominguez v. State*, 2013 ND 249, ¶ 22, 840 N.W.2d 596, holding an attempted murder conviction, under N.D.C.C. §§ 12.1–06–01 and 12.1–16–01(1)(b), under circumstances manifesting extreme indifference to the value of human life is not a cognizable offense; and in *State v. Borner*, 2013 ND 141, ¶ 20, 836 N.W.2d 383, holding "conspiracy to commit extreme indifference murder, under N.D.C.C. §§ 12.1–06–04 and 12.1–16–01(1)(b), is not a cognizable offense." The State responded requesting the district court dismiss the application because the two-year statute of limitations had expired and, alternatively, argued Keller's claims were barred by res judicata and misuse of process. On November 20, 2014, the district court dismissed the application as barred by the statute of limitations on the grounds Keller "failed to establish that the new interpretation of law is retroactively applicable to his case." Keller appealed.

II

[¶ 5] As a preliminary matter, we first address the State's assertions that Keller's arguments on appeal are barred by res judicata and misuse of process. The district court did not dismiss the post-conviction relief application on these bases, but the issues were raised below and are therefore preserved on appeal. *See Rakowski v. City of Fargo*, 2010 ND 16, ¶ 15, 777 N.W.2d 880.

[¶ 6] The State contends Keller's argument that the new interpretation of law is retroactively applicable to his case is barred by res judicata because Keller raised the argument in his motion to correct an illegal sentence, which the district court denied.

[¶ 7] In his May 19, 2014, motion to correct an illegal sentence, Keller argued he was convicted of the incognizable offense of attempted murder under circumstances manifesting an extreme indifference to human life. At that time, Keller did not raise the issue of whether his conspiracy to commit murder conviction was based on an incognizable offense. Keller made the same arguments and relied primarily on the same legal authorities in his motion to correct an illegal sentence as he made in his petition for post-conviction relief.

[¶ 8] Under N.D.C.C. § 29–32.1–12(1), "[a]n application for postconviction relief may be denied on the ground that the same claim or claims were fully and finally determined in a previous proceeding." The district court denied Keller's motion to correct an illegal sentence on the grounds Keller's argument was improperly brought under a N.D.R.Crim.P. 35(a) motion:

> The Defendant's motion may only be considered by the Court for purposes of correcting an illegal sentence as set forth within Rule 35(a)(2) by virtue of the time limitations. The Defendant's motion seeks not to correct an illegal sentence due to an error in arithmetic, technical, or other clerical error, but rather seeks to cause this Court to now reconsider and to retroactively apply subsequent Supreme Court decisions.

Keller did not appeal from the district court's denial of his Rule 35(a) motion to correct an illegal sentence. At first glance, it may appear that Keller's claim is barred by res judicata. However, N.D.R.Crim.P. 35(a) may only be used to correct an illegal sentence. It cannot be used to attack the underlying conviction. *State v. Ertelt*, 1997 ND 15, ¶¶ 5–6, 558 N.W.2d 860 (quoting the N.D.R.Crim.P. 35, Explanatory Note, indicating "it is presupposed that the conviction upon which the sentence has been imposed is valid"). " 'Res judicata, or claim preclusion, prevents relitigation of claims that were raised, or could have been raised, in prior actions between the same parties or their privies.' " *Riverwood Commercial Park v. Standard Oil Company*, 2007 ND 36, ¶ 13, 729 N.W.2d 101 (quoting *Ungar v. North Dakota State Univ.*, 2006 ND 185, ¶ 11, 721 N.W.2d 16). Res judicata is inapplicable when a statute, or in this case a rule, explicitly prohibits claims in the original actions. *Riverwood Commercial Park*, at ¶ 17; *see also State v. Kopperud*, 2015 ND 124, ¶ 4, 863 N.W.2d 852 (explaining that our review of rules and statutes is the same: "When we interpret a rule or a statute, we apply the rules of statutory construction and look at the language of the rule or statute to determine its meaning."). Here, Keller could not collaterally attack the conviction in the Rule 35 proceeding. Therefore, Keller is not barred by res judicata from raising this argument in a post-conviction relief application because the issue was not determined in Keller's Rule 35(a) motion. Keller's argument regarding the conspiracy charge could not be appropriately raised in his Rule 35(a) motion; therefore, it is not barred by res judicata.

[¶ 9] The State also contends Keller's argument is barred by misuse of process because Keller could have raised the arguments in the original proceeding leading to judgment or in a previous post-conviction relief application.

[¶ 10]   Under N.D.C.C. § 29–32.1–12(2)(a), "[a] court may deny relief on the ground of misuse of process.   Process is misused when the applicant . . . [p]resents a claim for relief which the applicant inexcusably failed to raise either in a proceeding leading to judgment of conviction and sentence or in a previous postconviction proceeding."   The State's assertion that Keller inexcusably failed to raise the issue of incognizable convictions on his own in the proceeding leading to the judgment of conviction or in his direct appeal to this Court ignores that the essence of Keller's argument centers on this Court's interpretations of law made after his judgment of conviction and direct appeal.   Keller's arguments rely heavily on *Dominguez* and *Borner,* opinions issued after the change to N.D.C.C. § 29–32.1–01(2) limiting the time to apply for post-conviction relief.   As such, we cannot conclude Keller's raising the arguments now in a post-conviction relief application qualifies as a misuse of process because it involves new interpretations of law that were not adopted at the time he was convicted or when he could have previously applied for post-conviction relief.

### III

[¶ 11]   On appeal, Keller argues the district court erred in dismissing his application for post-conviction relief because he asserted new interpretations of statutory law that are retroactively applicable to his case and fall within an exception to the two-year statute of limitations for filing a post-conviction relief application.

[¶ 12]   "Post-conviction relief proceedings are civil in nature and governed by the North Dakota Rules of Civil Procedure."   *Kinsella v. State,* 2013 ND 238, ¶ 4, 840 N.W.2d 625.   When this Court reviews a district court's decision in a post-conviction proceeding, questions of law are fully reviewable.   *Dominguez,* 2013 ND 249, ¶ 8, 840 N.W.2d 596.   This Court's standard for reviewing a summary denial of an application for post-conviction relief is similar to the standard for reviewing an appeal from summary judgment. *Id.* "The district court may summarily dispose of an application if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Id.*

[¶ 13]   Under N.D.C.C. § 29–32.1–01(2), a petitioner must file an application for post-conviction relief within two years of the date the conviction becomes final.   The conviction becomes final when:

a.   The time for appeal of the conviction to the North Dakota supreme court expires;

b.   If an appeal was taken to the North Dakota supreme court, the time for petitioning the United States supreme court for review expires;   or

c.   If review was sought in the United States supreme court, the date the supreme court issues a final order in the case.

N.D.C.C.   § 29–32.1–01(2).   However, courts may consider a post-conviction relief application, after the two years have elapsed, if any of the following exceptions apply:

(1)   The petition alleges the existence of newly discovered evidence, including DNA evidence, which if proved and reviewed in light of the evidence as a whole, would establish that the petitioner did not engage in the criminal conduct for which the petitioner was convicted;

(2)   The petitioner establishes that the petitioner suffered from a physical disability or mental disease that precluded timely assertion of the application for relief; or

(3) The petitioner asserts a new interpretation of federal or state constitutional or statutory law by either the United States supreme court or a North Dakota appellate court and the petitioner establishes that the interpretation is retroactively applicable to the petitioner's case.

N.D.C.C. § 29–32.1–01(3)(a) (stating "[n]otwithstanding subsection 2, a court *may* consider an application for relief under this chapter if: . . ." one of the exceptions applies) (emphasis added). The district court dismissed the application as barred by the statute of limitations on the grounds Keller "failed to establish that the new interpretation of law is retroactively applicable to his case." Keller does not appear to dispute that two years have elapsed since his conviction became final. Rather, Keller argues an exception to the two-year filing limit under N.D.C.C. § 29–32.1–01(3)(a)(3) applies. This exception applies when a petitioner establishes 1) a new interpretation of state or federal constitutional or statutory law, and 2) the interpretation is retroactively applicable to the petitioner's case. *See id.* Therefore, in order to prevail on appeal, Keller must satisfy both prongs of the two-part analysis under N.D.C.C. § 29–32.1–01(3)(a)(3): First, Keller must assert a new interpretation of law applies to his case and, second, establish the new interpretation is retroactively applicable to his case.

### A.

▆ [¶ 14] Keller argues he was convicted of a crime that does not exist, attempted murder under circumstances manifesting an extreme indifference to the value of human life. Specifically, Keller relies on *Dominguez*, 2013 ND 249, 840 N.W.2d 596 (holding an attempted murder conviction, under N.D.C.C. §§ 12.1–06–01 and 12.1–16–01(1)(b), is not a cognizable offense) and *Coppage v. State*, 2014 ND 42, 843 N.W.2d 291 (holding an attempted murder conviction, under N.D.C.C. §§ 12.1–06–01 and 12.1–16–01(1)(b), is not a cognizable offense).

[¶ 15] Under N.D.C.C. § 12.1–06–01, "[a] person is guilty of criminal attempt if, acting with the kind of culpability otherwise required for commission of a crime, he intentionally engages in conduct which, in fact, constitutes a substantial step toward commission of the crime." Under N.D.C.C. § 12.1–16–01(1)(a), "[a] person is guilty of murder . . . if the person: a. Intentionally or knowingly causes the death of another human being." Under N.D.C.C. § 12.1–16–01(1)(b), a person is guilty of murder if the person "causes the death of another human being under circumstances manifesting extreme indifference to the value of human life."

[¶ 16] In *Dominguez*, the defendant argued in his application for post-conviction relief that his attempted murder conviction was illegal because murder under circumstances manifesting an extreme indifference to the value of human life could not be the underlying charge for an attempt offense. 2013 ND 249, ¶ 1, 840 N.W.2d 596. In *Dominguez*, the defendant was charged in the alternative with attempted murder under both murder subsections (a) and (b) of N.D.C.C. § 12.1–16–01(1), along with the attempt under § 12.1–06–01. *Id.* at ¶ 2. The complaint alleged Dominquez threatened another person with a .22 caliber rifle and shot at him four times as he ran away. *Id.* In *Dominguez*, the jury instructions for the attempted murder offense required the State to prove the following elements beyond a reasonable doubt:

1. On or about August 4, 2011, in Walsh County, North Dakota, the Defendant, Esteban F. Dominguez;

2. Acted intentionally or knowingly to cause the death of another human being, David Nelson; or acted willfully under circumstances manifesting extreme indifference to the value of human life; and

3. The defendant, Esteban F. Dominguez, intentionally engaged in conduct which constituted a substantial step towards causing the death of another human being, David Nelson.

*Id.* at ¶ 24. The jury verdict form did not require the jury to specify whether it found Dominguez guilty of attempted intentional or knowing murder or whether it found Dominguez guilty of murder under circumstances manifesting an extreme indifference to the value of human life. *Id.* at ¶ 3. This Court concluded attempted murder, under N.D.C.C. §§ 12.1–06–01 and 12.1–16–01(1)(b), is not a cognizable offense:

> [A]ttempt is a specific intent crime, requiring an intent to commit the underlying offense. To be guilty of attempted murder, the State must prove the accused had an *intent to kill*. Murder committed under circumstances manifesting an extreme indifference to the value of human life results in an unintentional death. Therefore, we hold attempted murder, under N.D.C.C. §§ 12.1–06–01 and 12.1–16–01(1)(b), is not a cognizable offense.

*Id.* at ¶ 22 (emphasis added). This Court remanded to the district court to determine whether the error was harmless or whether Dominguez was entitled to relief. *Id.* at ¶¶ 26–27 (explaining that "the United States Supreme Court has held a conviction does not have to be set aside automatically if the jury is instructed on multiple theories of guilt and one of the theories is invalid").

[¶ 17] In *Coppage,* a jury convicted the defendant of attempted murder. 2014 ND 42, ¶ 1, 843 N.W.2d 291. The jury instruction for the attempted murder offense provided that the State was required to prove the following essential elements beyond a reasonable doubt:

(1) On or about the 24th day of October, 2006, in Burleigh County, North Dakota;

(2) The Defendant, Ernest Coppage,

(3) Intentionally,

(4) Engaged in conduct which constitutes a substantial step toward the commission of the crime of murder,

(5) Did so under circumstances manifesting an extreme indifference to the value of human life,

(6) Specifically, the defendant attempted to kill the victim, and

(7) The Defendant was not acting in self defense.

*Id.* at ¶ 31 (emphasis omitted). Relying on its holding in *Dominguez,* this Court on appeal vacated the criminal judgment for attempted murder stating:

> Under these circumstances, it is clear the jury found Coppage guilty of attempted murder under N.D.C.C. §§ 12.1–06–01 and 12.1–16–01(1)(b), and because attempted murder under N.D.C.C. § 12.1–16–01(1)(b) is not a cognizable offense, we exercise our discretion to notice this obvious error and reverse the district court's order to the extent that it denies post-conviction relief.

*Coppage,* at ¶ 34. Unlike *Dominguez,* the jury did not have the option to find Coppage guilty of attempted intentional murder. *Coppage,* at ¶ 31 ("Here, unlike in *Dominguez,* there is clear indication the jury found Coppage guilty of attempted murder under circumstances manifesting an extreme indifference to the value of human life under N.D.C.C. §§ 12.1–06–01 and 12.1–16–01(1)(b)."). Both *Dominguez*

and *Coppage* are distinguishable from the present case.

[¶ 18] In this case, count II in the information provided: "The defendant, acting with the kind of culpability otherwise required for commission of a crime, *intentionally* engaged in conduct which, in fact, constitutes a substantial step toward the commission of the crime of murder; specifically, the defendant discharged a firearm at a Bismarck Police Officer." (Emphasis added.) Unlike *Dominguez*, where the defendant "was charged with attempted murder under N.D.C.C. §§ 12.1–06–01 and 12.1–16–01(1)(a) and (b)," 2013 ND 249, ¶ 10, 840 N.W.2d 596, here, the complaint alleges only *intentional* conduct and makes no reference to willful conduct under circumstances manifesting extreme indifference to the value of human life. The information generally cited both N.D.C.C. §§ 12.1–06–01 and 12.1–16–01. The jury instructions provided: "A person is guilty of Attempted Murder if he either intentionally or knowingly attempts to *cause the death* of another human being; or if he willfully attempts to *cause the death* of a human being under circumstances manifesting extreme indifference to the value of human life." (Emphasis added.) The essential elements of attempted murder in the jury instructions were as follows:

The burden of proof resting upon the State is satisfied—only if the evidence shows, beyond a reasonable doubt, the following essential elements of the offense charged:

That on or about the 2nd–3rd day of August, 2003, in Burleigh County, North Dakota, the Defendant, Brandon Keller,

1. Attempted to cause the death of a Bismarck Police Officer intentionally or knowingly; or

2. Attempted to cause the death of a Bismarck Police Officer under circumstances manifesting extreme indifference to the value of human life.

The jury found Keller guilty of attempted murder. On the verdict form for the attempted murder charge, the jury solely wrote that it found Keller guilty of attempted murder, without specifying which type of murder it found. Unlike *Dominguez*, here, the jury instruction for the attempted murder under circumstances manifesting extreme indifference to the value of human life contains intentional language. Specifically, it provides Keller "*[a]ttempted to cause the death* of a Bismarck Police Officer under circumstances manifesting extreme indifference to the value of life." In *Dominguez*, the relevant jury instruction provided that if acting "willfully under circumstances manifesting extreme indifference to the value of human life," that person "intentionally engaged in conduct which constituted a substantial step towards causing the death of another human being." *Id.* at ¶ 24. Attempting to cause the death of someone significantly differs from intentionally engaging in conduct which constitutes a step towards causing the death of another human being. Attempting to cause the death of someone amounts to intentional attempted murder. Because both of the attempted murder instruction options for the jury required it to find Keller *intentionally* attempted to murder a police officer, it is not possible the jury found Keller guilty of the incognizable offense of attempted murder under circumstances manifesting extreme indifference to human life. Accordingly, as to the attempted murder conviction, we conclude Keller has not established part one of the two-part analysis under N.D.C.C. § 29–32.1–01(3)(a)(3)—the existence of a new interpretation of statutory law that is applicable to his case and falls within an exception to the two-year statute of limitations for filing a post-conviction relief application.

### B.

[¶ 19] In a Supplemental Rule 24 Statement, Keller, as a self-represented litigant, argues he was convicted of the incognizable offense of conspiracy to commit murder under circumstances manifesting extreme indifference to the value of human life. Keller argues that the jury would not have been able to separate the evidence between crimes alleged against him under circumstances manifesting extreme indifference to the value of human life and intentional murder.

[¶ 20] Under N.D.C.C. § 12.1–06–04, "[a] person commits conspiracy if he agrees with one or more persons to engage in or cause conduct which, in fact, constitutes an offense or offenses, and any one or more of such persons does an overt act to effect an objective of the conspiracy." In *Borner,* the State charged Borner "with conspiracy to commit murder under N.D.C.C. §§ 12.1–06–04, criminal conspiracy, and 12.1–16–01(1)(b), extreme indifference murder, alleging in the information that Borner agreed with another to 'willfully engage in or cause circumstances manifesting extreme indifference to the value of human life.'" 2013 ND 141, ¶ 2, 836 N.W.2d 383. This Court held "conspiracy to commit extreme indifference murder, under N.D.C.C. §§ 12.1–06–04 and 12.1–16–01(1)(b), is not a cognizable offense." *Id.* at ¶ 20. This Court specifically explained the inconsistency created in the elements of conspiracy and extreme indifference murder:

Extreme indifference murder is a general intent crime, not a specific intent crime. *See State v. Erickstad,* 2000 ND 202, ¶ 25, 620 N.W.2d 136. Under N.D.C.C. § 12.1–16–01(1)(b), a person does not intend to cause the death of another human-being, but rather death is a consequence of the defendant's willful conduct. *See Erickstad,* at ¶ 25. In

other words, extreme indifference murder results in an unintentional death from behavior manifesting an extreme indifference to the value of human life. Conspiracy, however, requires the intent to cause a particular result that is criminal. To be guilty of conspiracy to commit murder, an individual must intend to achieve the results—causing the death of another human being. Therefore, charging a defendant with conspiracy to commit unintentional murder creates an inconsistency in the elements of conspiracy and extreme indifference murder that is logically and legally impossible to rectify. An individual cannot intend to achieve a particular offense that by its definition is unintended.

*Id.* at ¶ 18. Further, this Court stated: "to find a person guilty of conspiracy to commit murder, the State must prove (1) an intent to agree, (2) an intent to cause death, and (3) an overt act." *Id.* at ¶ 20; *see also State v. Whitman,* 2013 ND 183, ¶ 11, 838 N.W.2d 401 (invoking our inherent authority to notice obvious error to grant Whitman the same relief as determined appropriate for his co-defendant in *Borner,* 2013 ND 141, ¶ 24, 836 N.W.2d 383). However, *Borner* is distinguishable from the present case.

[¶ 21] In this case, count I of the information provided:

The defendant, Brandon Keller, agreed with one or more persons to engage in or cause conduct which, in fact, constituted the offense of Murder, and any one or more of such persons performed the overt act of obtaining weapons and/or ammunition; and/or acquiring black clothing and/or ski masks and/or face paints;

Unlike *Borner,* the information generally cites N.D.C.C. §§ 12.1–06–04 and 12.1–16–01, without specifying the type of murder charged, rather than charging him with

extreme indifference murder under N.D.C.C. § 12.1–16–01(1)(b).

[¶ 22] The jury instructions defined criminal conspiracy as follows:

A person commits Criminal Conspiracy if that person agrees with one or more persons to engage in or cause conduct constituting an offense, and any one or more of those persons acts overtly to effect an objective of the conspiracy. The agreement need not be clearly stated. It may be implicit in the fact of collaboration or existence of other circumstances.

The jury was instructed as to the State's burden in proving the essential elements for the offense of conspiracy to commit murder as follows:

The burden of proof resting upon the State is satisfied only if the evidence shows, beyond a reasonable doubt, the following essential elements of the offense charged that:

1. On or between the 1st day of July and the 31st day of July, 2003, in Burleigh County, North Dakota,

2. The Defendant, Brandon Keller,

3. Agreed with one or more persons to engage in or cause conduct which, in fact, constituted the offense of murder,

4. And any one or more persons performed the overt act of:

   a. Obtaining weapons; or

   b. Obtaining ammunition; or

   c. Acquiring black clothing; or

   d. Acquiring ski masks; or

   e. Acquiring face paint.

[¶ 23] The jury found Keller guilty of conspiracy to commit murder. The jury verdict form did not specify whether the jury found Keller guilty of conspiracy to commit intentional murder or guilty of conspiracy to commit murder under circumstances manifesting an extreme indifference to the value of human life. The conspiracy to commit murder instructions did not provide a choice of the circumstances under which the offense was committed for the jury. In *Borner*, the final jury instructions defined conspiracy to commit murder as follows:

A person is guilty of conspiracy to commit murder if the person agreed with another to knowingly engage in or cause conduct which, in fact, constitutes *the offense of murder of another under circumstances manifesting extreme indifference to the value of human life*, and one party to that agreement did an overt act to effect an objective of the conspiracy.

2013 ND 141, ¶ 5, 836 N.W.2d 383 (emphasis added). Therefore, unlike in *Borner*, the jury instructions on the conspiracy charge here did not include any reference to conduct manifesting an extreme indifference to the value of human life.

[¶ 24] Additionally, in *Keller*, 2005 ND 86, ¶ 52, 695 N.W.2d 703, we outlined the evidence before the jury pertaining to the plan between the co-conspirator, Michael Sherman, and Keller, noting:

There was evidence that Sherman had talked about a "plan" to avoid being arrested and sent back to jail if confronted by law enforcement officers. That plan included using hostages and killing law enforcement officers. Although Keller admits he may have planned to use hostages if confronted by the police, he claims he never intended to kill any police officers and did not agree to a plan to kill police officers. However, in a statement to police shortly after being arrested, Keller acknowledged that he and Sherman had talked about a "shootout" and about "shooting cops." Moreover, there was evidence that, as between Sherman and Keller, Sherman was the person in charge, and

the circumstances in this case support an inference that Keller implicitly agreed to the plan.

The evidence included a plan to kill law enforcement officers. Accordingly, because the information and jury instructions did not reference extreme indifference to the value of human life, and considering the facts of the case included a plan to kill a law enforcement officer, it is logical that the jury properly found Keller guilty of conspiring to commit intentional murder under N.D.C.C. § 12.1–06–04 and N.D.C.C. § 12.1–16–01(1)(a), rather than § 12.1–16–01(1)(b). As such, Keller has not established this Court's holding in *Borner* relates to his case.

[¶ 25] Because Keller has not shown a new constitutional or statutory interpretation applies to his case, we need not address part two of the two-part analysis under N.D.C.C. § 29–32.1–01(3)(a)(3)— whether the interpretations can be applied retroactively. Keller has failed to satisfy the requirements under N.D.C.C. § 29–32.1–01(3)(a)(3) to show an exception to the two-year filing limit. While the district court dismissed Keller's application for post-conviction relief on a different basis, we will not set aside a correct result merely because the district court dismissed for a different reason. *See Guardianship of P.T.*, 2014 ND 223, ¶ 12, 857 N.W.2d 367 (citing *Investors Title Insurance Co. v. Herzig*, 2010 ND 169, ¶ 40, 788 N.W.2d 312).

## IV

[¶ 26] The district court order dismissing Keller's application for post-conviction relief is affirmed.

[¶ 27] DANIEL J. CROTHERS, DALE V. SANDSTROM and CAROL RONNING KAPSNER, JJ., concur.

VANDE WALLE, Chief Justice, concurring and dissenting.

[¶ 28] I concur with the majority opinion except with regard to Part III A with which I respectfully disagree and therefore dissent.

[¶ 29] My understanding of our decisions in *Dominguez v. State*, 2013 ND 249, 840 N.W.2d 596 and *State v. Borner*, 2013 ND 141, 836 N.W.2d 383, is that under N.D.C.C. § 12.1–16–01(1)(b) a person who causes the death of another human being under circumstances manifesting an extreme indifference to the value of human life is guilty of murder. A person who intentionally or knowingly causes the death of another human being is guilty of murder under subsection (1)(a). However, if a person acts under circumstances manifesting an extreme indifference to the value of human life and does not cause the death of another human being, that person is not guilty of attempted murder although the person may be guilty of other crimes. We said that in *Borner*, at ¶ 18 in reversing a conviction of conspiracy to commit murder under N.D.C.C. §§ 12.1–06–04 and 12.1–16–01(1)(b). We observed that extreme indifference murder is a general intent crime, not a specific intent crime and that under N.D.C.C. § 12.1–16–01(1)(b)

a person does not intend to cause the death of another human-being, but rather death is a consequence of the defendant's willful conduct. In other words, extreme indifference murder results in an unintentional death from behavior manifesting an extreme indifference to the value of human life. Conspiracy, however, requires the intent to cause a particular result that is criminal. To be guilty of conspiracy to commit murder, an individual must intend to achieve the results—causing the death of another human being.

*Borner,* at ¶ 18 (citation omitted). Because the offense under subsection (1)(b) does not involve intent, the person cannot be guilty of attempted murder under N.D.C.C. § 12.1–06–01. Section 12.1–16–01(1)(b) and section 12.1–06–01 are antithetical to one another.

[¶ 30] The majority distinguishes *Dominguez* and *Borner* because, as the majority reads the instructions here, "both of the attempted murder instruction options for the jury required it to find Keller *intentionally* attempted to murder a police officer, it is not possible the jury found Keller guilty of the incognizable offense of attempted murder under circumstances manifesting extreme indifference to human life." I disagree. Under the facts of this case, attempted murder under § 12.1–16–01(b) should never have been charged or instructed upon by the trial court. But it was charged, the instruction was given and subsection b was argued to the jury as an alternative basis for conviction by the State. As the majority opinion notes, there was no special verdict form provided to the jury asking the jury to find whether or not Keller was guilty of attempted murder under subsection (1)(a) or subsection (1)(b). To the extent the jury might have found Keller guilty of attempted murder under subsection (1)(b), Keller was found guilty of an incognizable crime, i.e., a crime which does not exist. Because no statute of limitations can justify denying review of a judgment of conviction for a crime that does not exist, under the circumstances of this case I would reverse the judgment convicting Keller of attempted murder.

[¶ 31]  GERALD W. VANDE WALLE, C.J.